No. 24-30730

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

United States of America,

Plaintiff- Appellee

v.

Marshall Grace,

Defendant - Appellant

---

**On Appeal from**

United States District Court for the Eastern District of Louisiana

22-CR-80

---

**BRIEF OF DEFENDANT-APPELLANT MARSHALL GRACE
CRIMINAL APPEAL**

---

STUART D. KOTTLE (#37194)
HANNAH L. BREWTON (#40178)
**SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, LLC**
909 Poydras Street, 27th Floor
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
Email: skottle@shergarner.com
         hbrewton@shergarner.com
*Attorneys for Defendant- Appellant
Marshall Grace*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Appellant certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1) **<u>Appellant:</u>**

    Marshall Grace

2) **<u>Counsel for Appellant:</u>**

    *Appeal*
    Stuart D. Kottle
    Hannah L. Brewton
    SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.
    909 Poydras Street, Suite 2800
    New Orleans, Louisiana 70112-4046
    (504) 299-2100

    *Trial*
    Arthur Anthony Lemann, IV
    Arthur Lemann, III. & Associates, Inc.
    1100 Poydras Street, Suite 3250
    New Orleans, LA 70163
    (504) 522-8104

    Johnathan Percy Lemann
    Couhig Partners, LLC
    1100 Poydras Suite, Suite 3250
    New Orleans, LA 70163
    (504) 588-1288

i

**3) <u>United States Assistant Attorneys:</u>**

Lynn E. Schiffman
Christopher Usher
Nolan D. Paige
DOJ-USAO
6502 Poydras Street
Suite 1600
New Orleans, LA 70130

**4) <u>District Judge:</u>**

Honorable Jay C. Zainey

Dated: July 28, 2025

*/s/ Stuart D. Kottle*
_____
**STUART D. KOTTLE**
**ATTORNEY OF RECORD FOR**
**MARSHALL GRACE**

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendant-Appellant Marshall Grace requests oral argument. This appeal raises two issues: whether the district court correctly overruled Mr. Grace's jury selection objection to the peremptory strike of a juror on the basis of a *Batson* violation and whether the state presented sufficient evidence to find Mr. Grace guilty of conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine. Oral argument would facilitate this Court's resolution of Mr. Grace's appeal.

# **TABLE OF CONTENTS**

Certificate of Interested Persons ................................................................ i

Statement Regarding Oral Argument ....................................................... iii

Table of Authorities ..................................................................................v

Jurisdictional Statement ...........................................................................1

Statement of Issues...................................................................................2

Statement of the Case...............................................................................3

   I.  Indictment................................................................................................3

   II.  Voir Dire.................................................................................................4

   III.The Evidence Presented at Trial. ...................................................6

   IV.  Sentence................................................................................................12

Summary of the Argument......................................................................12

Argument.................................................................................................13

   I.  Standards of Review............................................................................13

      A. *Batson* challenge standard...........................................................13

      B. Insufficient evidence standard. ....................................................14

   II. The District Court erroneously denied Mr. Grace's *Batson* challenge to the peremptory strike of Juror #8, Edward Davis. ...................................................15

      A. The District Court clearly erred in not granting Mr. Grace's Batson challenge because the Government failed to provide a non-pretextual, "race-neutral" explanation. ....................................................17

      B. The District Court impermissibly provided the Government a race neutral explanation. ...................................................20

   III.The Government did not present sufficient evidence to support Mr. Grace's conviction for conspiracy to distribute 500 grams of methamphetamine........21

Conclusion ..............................................................................................25

Certificate of Service ..............................................................................26

Certificate of Compliance .......................................................................27

Certificate of Electronic Compliance......................................................28

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                          <u>PAGE</u>

*Avery v. Georgia*,
    345 U.S. 559 (1953)..................................................................................16

*Batson v. Kentucky*,
    476 U.S. 79 (1986) ............................................................ *passim*

*Flowers v. Mississippi*,
    588 U.S. 284 (2019)....................................................... 17, 19

*Foster v. Chatman*,
    578 U.S. 488 (2016)................................................... 13, 16, 18

*Jackson v. Virgina*
    443 U.S. 307 (1979)......................................................... 14, 21

*Miller-El v. Dretke*,
    545 U.S. 231 (2005)..................................................................................18

*Moody v. Quarterman*,
    476 F.3d 260 (5th Cir. 2007).......................................................16

*Purkett v. Elm*,
    514 U.S. 765 (1995)..................................................................................16

*Snyder v. Louisiana*,
    552 U.S. 472 (2008).......................................................... 13, 16

*United States v. Beason*,
    690 F.2d 439 (5th Cir. 1982) ...................................................23

*United States v. Bieganowski*,
    313 F.3d 264 (5th Cir. 2002) ...................................................14

*United States v. Galvan*,
    693 F.2d 417 (5th Cir. 1982) ...................................................22

# TABLE OF AUTHORITIES, cont.

**CASES**                                                            **PAGE**

*United States v. Jackson*,
    700 F.2d 181 (5th Cir. 1983) ...................................................................23

*United States v. Kelley*,
    140 F.3d 596 (5th Cir. 1998) ...................................................................14

*United States v. Maltos*,
    985 F.2d 743 (5th Cir. 1993) ...................................................................22

*United States v. Pettigrew*,
    77 F.3d 1500 (5th Cir. 1996) ...................................................................23

*United States v. Plezia*,
    115 F.4th 379 (5th Cir. 2024) ..................................................................14

*United States v. Weischenberg*,
    604 F.2d 326 (5th Cir. 1979) ...................................................................22

*United States v. Westbrook*,
    119 F.3d 1176 (5th Cir. 1997) .................................................................14

*Wright v. Harris County*,
    536 F.3d 436 (5th Cir. 2008)............................................................ 13, 19

**STATUES**

18 U.S.C. § 3231 .......................................................................................1

18 U.S.C. § 3742 .......................................................................................1

21 U.S.C. § 841(a)(1).............................................................................3, 22

21 U.S.C. § 841(b)(1)(A) ................................................................... 3, 13, 22

21 U.S.C. § 846........................................................................................2

## <u>TABLE OF AUTHORITIES, cont.</u>

<u>**STATUTES**</u>                                                                 <u>**PAGE**</u>

28 U.S.C. § 1291 .................................................................................................1

## **JURISDICTIONAL STATEMENT**

This appeal is from the final judgment in a criminal case. The District Court had jurisdiction over this criminal proceeding under 18 U.S.C. § 3231. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The District Court entered written judgment imposing a 120-month term of imprisonment on November 12, 2024. ROA.597-598. Appellant filed a timely notice of appeal on November 15, 2024. ROA.604-605.

## <u>STATEMENT OF ISSUES</u>

1.      Whether the District Court erred by denying Mr. Grace's *Batson* challenge after the Government offered only the pretextual explanation that prospective juror had "seven sons," then impermissibly supplied its own race-neutral justification through post-strike judicial questioning.

2.      Whether the evidence was insufficient as a matter of law to support Mr. Grace's conviction for conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine under 21 U.S.C. § 846 because the Government relied on uncorroborated testimony from noncredible cooperating witnesses.

## STATEMENT OF THE CASE

### I.    Indictment.

Mr. Marshall Grace was arrested on July 29, 2020, following a traffic stop in which law enforcement officers recovered approximately 441 grams of methamphetamine from a vehicle he was driving. ROA.1110. On May 18, 2022, Magistrate Judge Janis van Meerveld arraigned him on two counts: Count 1, conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and Count 2, possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). ROA.618. Mr. Grace pleaded not guilty. ROA.619.[1]

On June 26, 2024, Magistrate Judge Van Meerveld arraigned Mr. Grace was on a superseding indictment containing two counts: Count 1**,** conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and Count 2, possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). ROA.376. Mr. Grace entered pleas of not guilty to both counts. ROA.376.

---

[1] On April 19, 2023, Judge Jay C. Zainey heard Mr. Grace's motion to suppress statements obtained following the traffic stop, including those given to DEA agents two days later. ROA.621-756. The motion was denied. ROA.134. Additionally, on September 12, 2023, Judge Zainey conducted a *Frye* hearing on a proposed plea agreement. ROA.757-770.

## II.    Voir Dire.

Jury selection began on August 12, 2024. ROA.782. Judge Zainey questioned the panel, then examined individual jurors as well as permitting both counsel for the Government and Mr. Grace to further question the jurors. ROA.782-947.

After peremptory strikes by Mr. Grace and the Government, Mr. Grace challenged the Government's strike under *Batson v. Kentucky*, 476 U.S. 79 (1986) to the use of peremptory strikes on two of three African American jurors, Edward Davis and Cole White.[2] ROA.933. The Government responded that "there wasn't much to go on for Mr. Davis except for the fact that we knew he had seven sons and based on that information and not knowing much else about him, we chose that he would probably not be a great juror for the government." ROA.933. The District Court stated: "[Y]ou're not convincing me that [having seven sons] is a proper reason to strike this African American gentleman when you have an African American defendant." ROA.933-934. The District Court also asked the Government why it failed to question about whether having seven sons was a concern for him to serve as a juror. *See* ROA.933. The Government responded that it also struck non-African American jurors and was not striking "Mr. Davis for a non race-neutral reason based on the panel as a whole." ROA.935-936. Mr. Grace's trial counsel argued that two of the three African American jurors among the 12 paneled jurors

---

[2] Appellant is not challenging the strike of Mr. Cole on appeal.

were struck, which shows a prima facie case for racial discrimination. ROA.936.[3]
The District Court told counsel that he would question Mr. Davis on his family status
and again told the Government that, "I have a problem with that." ROA.937.

When Mr. Davis was questioned again, he disclosed that one son had served
two-and-a-half years in jail and five years probation for a gun-related charge.
ROA.940. Mr. Davis expressed uncertainty about his son's fair treatment due to
defense counsel but would not hold this against the Government. ROA.940-41.
When asked about being an impartial juror, Mr. Davis responded, "Well, to me, you
know, only God can judge people. You know, I can't really judge nobody. Only God
can judge people." ROA.941. Neither the Government nor the defense asked Mr.
Davis any questions. ROA.941-942. The District Court denied Mr. Grace's *Batson*
challenge, stating:

> You know, I can see why – had the government known this, now they
> know it, there would be grounds to use – exercise a peremptory
> challenge. That challenge is not based on his race at all, just based on
> the fact that his son spent over two years in jail without anybody coming
> forward or anything. So – so I feel that *Batson* would not be applicable
> in this case and I will allow the – I will allow – I will deny you…

ROA.942. As a result, Mr. Davis was struck from the jury.

---

[3] Mr. Grace's trial counsel further added that there were 31 potential jurors, among which four were African
American, and that the Government struck half the potential African American jurors. ROA.936.

### III.    The Evidence Presented at Trial.

The jury trial proceeded on August 12 and 13, 2024, before Judge Zainey. The Government contended that Mr. Grace supplied to two street-level dealers, Jason Lonie and Theodore Tardie, in a conspiracy involving more than 500 grams of methamphetamine. ROA.961. The two-day trial centered on indirect surveillance, contested admissions, and testimony from two cooperating witnesses with extensive drug histories and pending charges. ROA.963-965.

The investigation began in early 2020, when DEA Special Agent Roberto Murillo began surveillance on Theodore Tardie, a methamphetamine dealer in the Hollygrove neighborhood. ROA.967. The DEA used electronic surveillance techniques, including toll analysis, GPS phone pings, and license plate reader ("LPR") databases. ROA.968-973. Agents identified communications with phone numbers linked to—but *not* registered to—Mr. Grace and, as a result, began monitoring his travel patterns. ROA.968-973.

By July 2020, the DEA observed Mr. Grace's travel patterns to Mississippi and requested that Louisiana State Police initiate a traffic stop on a white BMW returning from that direction. ROA.978. Sergeant David Levy testified that he pulled over the vehicle on the evening of July 29, driven by Mr. Grace, after observing a lane violation. ROA.1030-1033. The vehicle reportedly emitted a strong marijuana odor, and Sergeant Levy testified that Mr. Grace's and Ms. James's reasons for

visiting Mississippi were inconsistent. ROA.1034-1036. Consequently, Sergeants Levy, Dereck Clarke, and Fandal, as well as some assistant troopers, arrived at the scene of the traffic violation stop and began a narcotics investigation after reading Mr. Grace his Miranda rights. ROA.1036-1037. During the search, officers located a hidden package later determined to be 441.4 grams of methamphetamine. ROA.1039-1040.

Sergeant Clarke arrived as backup, claiming his role was to ensure the safety of Mr. Grace. ROA.1041. After Sergeant Clarke arrived, he put Mr. Grace in the back of his police vehicle. ROA.1041. But Sergeant Clarke had "forgotten" to search Mr. Grace prior to putting him in the vehicle. ROA.1083. He then proceeded to ask Mr. Grace about the smell of marijuana odor. ROA.1083. In response, Mr. Grace removed a small package of marijuana from his groin and gave it to Sergeant Clarke. ROA.1083. According to Sergeant Clarke, Mr. Grace said he would help remove the narcotics the troopers were looking for from the BMW. ROA.1084. No recording captured this exchange, as Sergeant Clarke had turned off his body camera and the camera footage from the police vehicle rear cam was unable to be recovered. ROA.1088, 1090-1092. The body cam footage did capture Mr. Grace's statements that the BMW was not his, and that he did not know what was inside of the car. ROA.1087. Mr. Grace also did not assist in searching the vehicle and, instead, was placed back into the police vehicle. ROA.1085.

After discovering methamphetamine in a hidden compartment in the trunk of the BMW, under upholstery and a towel, Mr. Grace was arrested and transported to the State Trooper Station L. ROA.1099. After being read his Miranda rights, Master Trooper David LaCroix interrogated Mr. Grace. ROA.1102. Mr. Grace allegedly confessed that the methamphetamine belonged to him and that his passenger, Gwenette James, had no knowledge of the drugs. ROA.1102. According to Trooper LaCroix, Mr. Grace offered to assist law enforcement in obtaining 10 to 15 pounds of additional methamphetamine, identified supplier Harris Henderson, and named customers. ROA.1103-1107. He also signed forms consenting to the search of two cell phones found in the vehicle. ROA.1103. Trooper LaCroix claimed he saw communications in the phones that he interpreted as narcotics trafficking. ROA.1106-1107.

After DEA Agent Murillo arrived at the station, Mr. Grace signed a "voluntary statement" in which he admitted to the narcotics in the vehicle belonging to him, and not to his passenger Ms. James. ROA.1107-1109. This statement included multiple "scratch outs" that Trooper LaCroix explained were requested by him, as Mr. Grace's original statement was "vague" and Mr. Grace needed to clarify what kind of narcotics were found within the vehicle on the statement. ROA.1107-1109. Trooper LaCroix noted that because of this statement Ms. James was released.

ROA.1110. The alleged admission occurred after the officers suggested that Ms. James would be released if Mr. Grace took responsibility for the drugs in the car.

Mr. Grace was booked and transferred to the St. Tammany Parish jail, where the next day Trooper LaCroix and another DEA agent questioned him about a line up of supplier and dealers. ROA.1111-1113. Mr. Grace then allegedly identified a photo of Mr. Tardie as his "partner." ROA.1113-1114.

On cross examination, Trooper LaCroix admitted that

- there were no audio or visual recordings of these interviews (or alleged confessions), ROA.1116;

- the state police do not possess any DNA or fingerprints connecting Mr. Grace to the illegal drugs, ROA.1116;

- no member of the state police had ever seen Mr. Grace selling or distributing drugs, ROA.1116; and

- no member of the state police had ever seen Mr. Grace text on or use the phones that were confiscated. ROA.1123.

Further, Agent Murillo revealed that no one had conducted any wire taps, undercover narcotics buys, or surveillance footage of any methamphetamine distribution involving Mr. Grace. ROA.989.

DEA forensic chemist, Elizabeth Adkins, tested the narcotics found in the BMW *after* eighteen months in evidence, finding it was 63% pure methamphetamines in the amount of 441.4 grams. ROA.1133-1134.

The Government's case relied primarily on two cooperating witnesses: Jason Lonie and Theodore Tardie. Both admitted to long-term methamphetamine use since Hurricane Katrina and had strong incentives to cooperate, as their testimony against Mr. Grace was the basis of lesser charges against them in various other pending matters brought by the Government. ROA.1172, 1174, 1210, 1255, 1258. Mr. Lonie claimed that he purchased one ounce of methamphetamine from Mr. Grace every other day since 2019, for either personal use or to resell. ROA.1178. Mr. Lonie is a chronic abuser of methamphetamine, having used the drug every day that he had access (and not in custody) for the last 15 years. ROA.1194. Mr. Lonie has several pending state and federal charges regarding possession with intent to sell methamphetamines, for which he cut a deal with the Government in exchange for his cooperation in testifying against Mr. Grace. ROA.1209. Mr. Lonie only witnessed Mr. Grace driving a Range Rover, *not* a BMW, and that he would mainly interact with Mr. Grace's "wife" Gwen during these alleged drug transactions. ROA.1177.

Mr. Tardie also reported heavy methamphetamine use since he was a teenager. ROA.1258. Mr. Tardie also has many previous state and federal convictions, stating

that he did not remember the timing or the circumstances surrounding most of them. ROA.1251. According to Mr. Tardie, he bought methamphetamine from Mr. Grace to use and redistribute. ROA.1232.

Both witnesses cited text message with Mr. Grace as evidence of drug deals. ROA.1181, 1239. However, the phones producing those texts were not registered to Mr. Grace and that the messages did not mention him by name. ROA.1265, 1266. Under questioning by defense, both witnesses testified that they could not recall specific interactions beyond those in the text messages extracted from the two cell phones. ROA.1260.

After the Government rested, and the defense moved for a judgment of acquittal on the basis that the Government did not prove the elements of conspiracy. ROA.1264-1266. Mr. Grace's counsel explained that the Government's evidence did not prove the elements of conspiracy, arguing insufficient proof that two or more persons reached an agreement for the unlawful purpose of distributing narcotics and that the conspiracy involved at least 500 grams of methamphetamines. ROA.1264-1266. The Defense argued that the Government's case was heavily reliant on witnesses that were not credible, under the influence of drugs, and had incentive to testify against Mr. Grace. ROA.1264-1266. The Defense also argued that the Government's witness testimony was not supported by corroborating evidence, as the text messages Mr. Lonie and Mr. Tardie relied upon came from phones that were

11

not registered to Mr. Grace and did not identify him by name. ROA.1264-1266. The District Court denied the motion. ROA.1264-1266.

The Defense then presented the testimony of witness Tasha Houston, Mr. Grace's current girlfriend living in Meridian Mississippi at the time of his arrest. ROA.1270-1271. According to Ms. Houston, Mr. Grace visited her on the day of his arrest and arrived in the BMW with an unidentified man in the passenger seat. ROA.1272-1274. This man dropped off Mr. Grace and drove the BMW for several hours before returning it to Mr. Grace. ROA.1275-1276. Although the Government questioned Ms. Houston's credibility based on a prior embezzlement conviction, ROA.1278. Ms. Houston's account suggested the drugs found in the vehicle were not under Mr. Grace's control.

The jury convicted on both counts. ROA.1358-1362.

## IV.   Sentence.

On November 12, 2024, the court sentenced him to the statutory minimum of 120 months' imprisonment. ROA.1380-1383. Mr. Grace timely filed a notice of appeal and now challenges his conviction and sentence. ROA.604.

## SUMMARY OF THE ARGUMENT

*First*, the District Court erroneously denied Mr. Grace's *Batson* challenge because the Government's reason for striking prospective juror Edward Davis—that he had seven sons—was pretextual. Moreover, the District Court impermissibly

supplied its own justification for the strike after questioning the juror, thereby substituting the Government's reason for the peremptory strike with a post-hoc justification.

*Second*, there was insufficient evidence to support the conspiracy conviction. The Government failed to prove Mr. Grace possessed or distributed 500 grams or more of methamphetamine as required for conviction under 21 U.S.C. §§ 841(b)(1)(A) and 846. The evidence consisted of *441* grams found in a vehicle Mr. Grace drove but did not own, testimony from heavily impaired cooperating witnesses with substantial credibility issues, and text messages from phones not registered to Mr. Grace. There were no surveillance, wiretaps, or direct evidence to establish a conspiracy that involved 500 grams or more of methamphetamine.

## ARGUMENT

### I.    Standards of Review.

#### A.    *Batson* challenge standard.

This Court reviews *Batson* challenges for clear error. *Wright v. Harris County*, 536 F.3d 436, 438 (5th Cir. 2008). When reviewing the third step to a *Batson* challenge—*e.g*., here whether the Defense established that the Government purposefully discriminated in striking a juror based on race—the appellate court must defer to the district court's factual findings unless they are clearly erroneous. *Foster v. Chatman*, 578 U.S. 488, 500 (*citing Snyder v. Louisiana*, 552 U.S. 472, 477 (2008)).

### B.    Insufficient evidence standard.

This Court reviews *de novo* a claim of insufficient evidence to support a conviction. *United States v. Plezia*, 115 F.4th 379, 394 (5th Cir. 2024). In evaluating a claim of insufficiency of the evidence on appeal, the Court "must view the evidence and the inferences therefrom in the light most favorable to the jury's verdict and determine whether a rational trier of fact could have found [defendant] guilty beyond a reasonable doubt." *United States v. Kelley*, 140 F.3d 596, 607 (5th Cir. 1998). But where, as here, a case depends on circumstantial evidence, if "the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, a defendant is entitled to a judgment of acquittal." *United States v. Bieganowski*, 313 F.3d 264, 275 (5th Cir. 2002). "Uncorroborated testimony from a co-conspirator, including one who has agreed to testify in exchange for leniency, may be found to be sufficient evidence to convict, provided the testimony is not factually insubstantial or incredible." *Perez*, 306 Fed. Appx. 110 (*citing United States v. Westbrook*, 119 F.3d 1176, 1190 (5th Cir. 1997)). The conviction must be reversed if the rational trier of fact could not have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979).

14

**II.    The District Court erroneously denied Mr. Grace's *Batson* challenge to the peremptory strike of Juror #8, Edward Davis.**

Mr. Grace, an African American defendant, objected when the Government used a peremptory strike to remove Mr. Davis, an African American man, from the jury. ROA.933. Defense counsel made a *Batson* challenge, and the Government's stated, race-neutral explanation was that not much was known about Mr. Davis except that he had seven sons. ROA.933.

In *Batson v. Kentucky*, 476 U.S. 79, 86 (1986), the United States Supreme Court held that purposeful discrimination in the selection of the jury violates a defendant's right to equal protection. *Batson* established a three-tiered process to evaluate *Batson* challenges: (1) the burden to prove purposeful discrimination is on the defendant, who must initially establish a *prima facie* case. *Id.* at 95-97; (2) once he does so, the burden shifts to the prosecution to provide a race-neutral reason for the peremptory strike. *Id.* at 94, 97-98; and (3) the court must then determine whether "the defendant has established purposeful discrimination." *Id.* at 98.

When challenging the use of peremptory strikes, the defendant "may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges." *Batson*, 476 U.S. at 96. The defendant must show that he is a member of a cognizable racial group and that the prosecutor used peremptory challenges to remove from the jury venire members of the defendant's race. *Id.* The defendant is entitled to rely on

the fact "that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Id.* (quoting *Avery v. Georgia*, 345 U.S. 559, 562 (1953)). Finally, the defendant must show that these facts and other relevant circumstances raise an inference that the prosecutor purposefully discriminated. *Id.*

"The Supreme Court has long since made clear that the Equal Protection Clause of the Fourteenth Amendment prohibits prosecutors from striking prospective jurors solely on the basis of race." *Moody v. Quarterman*, 476 F.3d 260, 266 (5th Cir. 2007). The Constitution forbids striking even a single prospective juror for a discriminatory purpose. *Flowers v. Mississippi*, 588 U.S. 284, 303 (2019); *Foster v. Chatman*, 578 U.S. 488, 499 (2016); *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008). Whether a defendant has carried his burden to prove purposeful discrimination is based on the persuasiveness and credibility of the prosecutor's justification for his exercise of the peremptory strike. *Moody v. Quarterman*, 476 F.3d 260, 267 (5th Cir. 2007). "[I]mplausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Id.* (*quoting Purkett v. Elm*, 514 U.S. 765, 768 (1995)).

**A.    The District Court clearly erred in not granting Mr. Grace's Batson challenge because the Government failed to provide a non-pretextual, "race-neutral" explanation.**

The Government's sole articulated rationale for striking Mr. Davis (that he had seven sons, ROA.933. represents precisely the type of implausible justification that *Batson* recognizes as pretextual. The Government struck a juror with seven African American sons that were close in age to Mr. Grace. ROA.933. Indeed, the District Court thought the Government's explanation was suspicious and initially was not inclined to deny Mr. Grace's *Batson* challenge. *See* ROA.933-34. Although the District Court did not excuse Mr. Davis until after the Court questioned him further, *Batson* requires the District Court to consider the explanation on its face. *See Moody*, 476 F.3d at 267 (nothing that the second step of the *Batson* challenge is whether there is facial validity for the explanation.) On its face, the Government's "race-neutral" explanation is clearly pretextual.

Moreover, comparing Mr. Davis to jurors who were not struck by the Government further shows that the race-neutral explanation by the Government was pretextual. A comparison of prospective jurors who were struck and who were not struck "can be an important step in determining whether a *Batson* violation occurred." *Flowers*, 588 U.S. at 311. "The comparison can suggest that the prosecutor's proffered explanations for striking black prospective jurors were a pretext for discrimination." *Id.* When a prosecutor's reason for striking an African

American juror applies to an otherwise-similar non-African American panelist who serves on the jury, that is evidence tending to prove purposeful discrimination. *Id.* (*quoting Foster v. Chatman*, 578 U.S. at 512) (internal quotations omitted); *Miller-El v. Dretke*, 545 U.S. 231 (2005)). The compared panelists do not need to be identical in all respects to show discriminatory intent. *Id.* (*citing Miller-El*, 545 U.S. at 247, n. 6).

The Government's stated explanation for striking Mr. Davis applies equally to three non-African American jurors who served on the jury. The Government struck Mr. Davis because "there wasn't (sic) much to go on for Mr. Davis except for the fact that we knew he had seven sons and based on that information and not knowing much else about him, we chose that he would probably not be a great juror for the government." ROA.933. Mr. Davis did not answer any questions in *voir dire* except when the District Court asked for each juror's name, occupation, and family status. Yet, three other non-African American jurors who also only answered questions regarding name, occupation, and family status were empaneled: Potential Juror 4, Matthew Thomas; Potential Juror 21, Stacey Hall; and Potential Juror 31, Dillon Credeur. ROA.889, 906, 932. All had children.[4] ROA.889, 904, 906. The only distinction is race, which compels a finding a purposeful discrimination.

---

[4] The record does not indicate the gender of the children.

In *Flowers*, the state struck a potential African American juror, Carolyn Wright, because she knew several defense witnesses and had worked at the Wal-Mart where the father of the defendant, Flowers, worked. *Flowers*, 588 U.S. at 312. Ms. Wright had a connection with 34 people involved in Mr. Flowers's case on both the prosecution and the defense side. *Id.* Three potential non-African American jurors also knew many people involved in the case. *Id.* The State asked Ms. Wright extensive questions about her relationship with people involved in the case, but it did not ask any questions to the three potential non-African American jurors. *Id.* at 309-10, 312. Both Ms. Wright and the potential non-African American jurors knew members of Mr. Flowers's family. *Id.* at 312-13. Relying, in part, on the disparate treatment of Ms. Wright and the potential non-African American jurors, the Supreme Court held that the State engaged discrimination in striking Ms. Wright from the jury panel.

Here, the Government struck one African American juror who had children while accepting non-African American jurors with children. empaneled the non-African American potential jurors who had similar characteristics. Based on the Government's lack of a race-neutral explanation, the District Court clearly erred in denying Mr. Grace's *Batson* challenge.

### B.    The District Court impermissibly provided the Government a race neutral explanation.

The District Court erred by supplying its own justification for the Government's peremptory strike rather than evaluating the reason actually given by the Government. A court cannot provide a substitute reason for the elimination of a potential juror. *See Miller-El*, 545 U.S. at 233. To do so is erroneous as a matter of fact and law. *Id.*

The Government initially struck Mr. Davis offering a single reason: it knew little about him except that he had seven sons. ROA.933. Only after the District Court questioned Mr. Davis did the Government learn that Mr. Davis's son had a criminal conviction. ROA.940. Because Mr. Davis's son had a criminal conviction, the District Court overruled the *Batson* challenge, stating:

> You know, I can see why – **had the government known this**, now they know it, **there would be grounds to use – exercise a peremptory challenge**. That challenge is not based on his race at all, just based on the fact that his son spent over two years in jail without anybody coming forward or anything. So – so I feel that *Batson* would not be applicable in this case and I will allow the – I will allow – I will deny you…

ROA.942 (emphasis added). Neither the Judge nor the parties knew of the criminal conviction prior to the Judge's questions. As such, the Government's use of its peremptory challenge was not based upon Mr. Davis's son's conviction. Rather, the

government's peremptory challenge was based solely on the fact that an African American juror had seven sons.

The District Court should have only evaluated the Government's race-neutral explanation through its additional *voir dire* questions to Mr. Davis. After doing so, the Government did not change its race-neutral explanation following the additional questions. ROA.943. Nonetheless, the District Court supplied its own race-neutral explanation on behalf of the Government. 942. Because it is the Government's burden to supply a race-neutral explanation that will survive a *Batson* challenge, by supplying the reason that the peremptory strike was acceptable, the District Court overstepped its role by substituting its own explanation for striking the juror for that of the Government. This Court should find that the District Court clearly erred in not granting Mr. Grace's *Batson* challenge because the Government failed to provide a non-pretextual, "race-neutral" explanation.

## III. The Government did not present sufficient evidence to support Mr. Grace's conviction for conspiracy to distribute 500 grams of methamphetamine.

Mr. Grace's conviction for conspiracy must be reversed because the evidence was insufficient for a reasonable jury to conclude that Mr. Grace possessed and distributed 500 grams of methamphetamine. The Government must prove its allegations beyond a reasonable doubt by producing before the jury sufficient evidence from which a rational juror could determine guilt. *See Jackson v. Virgina*

443 U.S. 307, 316 (1979). The elements of conspiracy under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, require that the Government prove beyond a reasonable doubt that Mr. Grace conspired with two or more individuals to distribute methamphetamine, and that he knew or reasonably should have known that the scope of the conspiracy involved the distribution or possession with the intent to distribute 500 grams or more of methamphetamine. To prove the existence of a conspiracy by circumstantial evidence, each link in the inferential chain must be clearly proven. *Galvan*, 693 F.2d 417 (5th Cir. 1982). The conspiracy conviction must be reversed because there was insufficient evidence that Mr. Grace was part of a conspiracy to distribute over 500 grams of methamphetamine.

In *United States v. Galvan*, this Court reversed a conviction of conspiracy to possess and distribute drugs where a significant amount of marijuana was found in a vehicle in which the defendant told officers he had loaned out, and where the evidence consisted primarily of telephone records that did not show who made the communications. *See* 693 F.2d 417 (5th Cir. 1982). In reversing the conviction, this Court noted that "It is not enough for it merely to establish a climate of activity that reeks of something foul." *Id.* at 419 (*quoting United States v. Weischenberg*, 604 F.2d 326, 332 (5th Cir. 1979)). Association with other drug traffickers and presence during the transportation of contraband has been held to be insufficient to convict an accused of conspiracy. *United States v. Maltos*, 985 F.2d 743 (5th Cir. 1993); *United*

22

*States v. Beason*, 690 F.2d 439 (5th Cir. 1982). As stated by this Court in reversing a conviction for insufficient evidence:

> Nevertheless, we must not hesitate to overturn a jury verdict when it is necessary to guard against delusion of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. . . Juries must not be allowed to convict on mere suspicion and innuendo. . . The test is whether or not the jury could reasonably, logically, and legally infer from the evidence presented that the appellant was guilty beyond a reasonable doubt.

*United States v. Jackson*, 700 F.2d 181, 185 (5th Cir. 1983).  Additionally, this Court has found that "a verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Pettigrew*, 77 F.3d 1500 (5th Cir. 1996).

Here, the Government did not present sufficient evidence to prove Mr. Grace was part of a conspiracy to distribute 500 grams or more of methamphetamine. The Government instead presented *inferences* upon *inferences* through text messages from phones not registered to Mr. Grace, that do not mention Mr. Grace by name, and introduced through incarcerated witnesses with incentives to testify against Mr. Grace. The lack of evidence is even more telling because there is no surveillance data of Mr. Grace doing any dealing or picking up of methamphetamine, no wire taps of phone conversations about this alleged conspiracy, and no identification of Mr. Grace possessing any methamphetamine outside of the 441 grams outside of the vehicle (which did not have his fingerprints or DNA on them and which he stated at

the traffic stop he was unaware of). ROA.116. Further, while the Government relies upon text messages to prove that Mr. Grace distributed an additional 59 grams of methamphetamine, the text messages alone do not identify *when* such distributions occurred, between *whom* they occurred, or *how* many grams were allegedly involved. The testimony of Mr. Lonie and Mr. Tardie, supposedly corroborating these text messages, was inherently unreliable, as the witnesses testified that they were heavy meth users that used multiple suppliers of narcotics. Mr. Lonie and Mr. Tardie could not even recall specifics regarding their supposed relationship with Mr. Grace or the circumstances surrounding the alleged drug transactions identified in the text messages. ROA.1260.

Further, Ms. Houston's testimony contradicts the inference that the methamphetamine found in the vehicle being driven by Mr. Grace belonged to him. ROA.1275-1276. Ms. Houston recounted that *another* individual had possession of the vehicle for multiple hours in which Mr. Grace was unaware of the ongoings of that individual. ROA.1275-1276. Additionally, any "confession" of Mr. Grace is called into question where it was not recorded in any way, included multiple revisions at the request of the interrogating officers, and was made specifically after Mr. Grace informed the interrogating officers that the did not want Ms. James to be charged with the possession of the drugs. ROA.1004. This circumstantial evidence presented by the Government does not establish beyond a reasonable doubt that Mr.

Grace was ever in possession of 500 grams or more of methamphetamine with the intent to distribute it as a part of a conspiracy.

Mr. Grace's conviction of conspiracy was based upon the self-serving testimony of criminals cooperating with the government and was insufficiently corroborated. No rational juror could have found guilt beyond a reasonable doubt and the evidence was therefore insufficient to support the conviction. Mr. Grace respectfully requests this Court, on a *de novo* review, find there was insufficient evidence to support Mr. Grace's conviction of conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine.

## CONCLUSION

Mr. Grace respectfully requests this Honorable Court vacate his conviction.

Respectfully submitted,

*/s/ Stuart D. Kottle*

_____

STUART D. KOTTLE (#37194)
HANNAH L. BREWTON (#40178)
**SHER GARNER CAHILL RICHTER**
**KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112-4046
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
*Attorneys    for    Defendant-Appellant*
*Marshall Grace*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing instrument has been served via the Court's

ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of

Appellate Procedure, on July 28, 2025, on all registered counsel of record, and has

been transmitted to the Clerk of the Court.

*/s/ Stuart D. Kottle*

_____

**STUART D. KOTTLE**
**ATTORNEY OF RECORD FOR**
**MARSHALL GRACE**

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 5,314 words as determined by the word-count function of Microsoft Word 2013, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Times New Roman font, 14-point type face.

*/s/ Stuart D. Kottle*

_____

**STUART D. KOTTLE**
**ATTORNEY OF RECORD FOR**
**MARSHALL GRACE**

## <u>CERTIFICATE OF ELECTRONIC COMPLIANCE</u>

I hereby certify that (1) the required privacy redactions, if any, have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.; and (3) the document has been scanned and is free of viruses.

*/s/ Stuart D. Kottle*

_____

**STUART D. KOTTLE**
**ATTORNEY OF RECORD FOR**
**MARSHALL GRACE**